UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL CORP., | : | Case No. 3:13-cv-00228 (MPS) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS M. ANDERSON, | : | |
| STEVEN R. ROSENDALE, | : | |
| PETER G. DEGROOD, | : | |
|     Defendants. | : | February 11, 2015 |

_____

## ORDER DENYING SUMMARY JUDGMENT
## AS TO THOMAS M. ANDERSON

### I.   Introduction

Plaintiff General Electric Capital Corporation ("GECC") has moved for summary judgment against Defendant Thomas M. Anderson ("Anderson")[1] on its claim that Anderson breached an individual guaranty of a seven-million-dollar loan to three affiliated corporations in the concrete pumping industry, on which payments are owed. The Court denies summary judgment because the guaranty, as amended by subsequent agreements, is ambiguous as to whether Anderson's liability was conditional on the occurrence of fraud or wrongdoing in connection with the loan, which creates a genuine dispute as to a material fact.

### II.   Legal Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving

---

[1] GECC has settled its claim against Peter G. DeGrood. *See* ECF Nos. 42, 43. Steven R. Rosendale filed a notice to the Court that he had filed for bankruptcy protection, thereby staying the case against him. *See* ECF No. 30.

party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment. Any weighing of the evidence is the prerogative of the finder of fact, not an exercise for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) (citations omitted).

### III.     Pertinent Facts

The following facts are undisputed. On June 29, 2007, GECC entered into the Master Security Agreement with non-parties Central Concrete Pumping, Inc., Southwest Concrete Pumping, Inc., and AJ Concrete Pumping II, Inc. ("the Borrowers"). Under the agreement, GECC loaned the Borrowers $7,151,330.00. The Borrowers executed promissory notes agreeing to repay the full loan amount plus interest. The Borrowers also granted GECC first-priority security interests in various pieces of equipment, as described in four collateral schedules, and entered into the Cross Collateral and Cross Default Agreement, which provides that a default on any account or agreement is a default under all other accounts and agreements between GECC and the Borrowers. Several individuals, including Anderson, then signed Individual Guaranties, guaranteeing "regular and punctual payment of any sum or sums of money which the [Borrowers] may owe to you now or at any time hereafter."

The Master Security Agreement was later modified several times. It was first amended on May 30, 2008, when the parties executed the Modification Agreement and First Amendment to Master Security Agreement, which Anderson signed as a guarantor.

The Borrowers then defaulted on the loan, and on September 25, 2009, GECC, the Borrowers, Anderson, and other parties executed the Forbearance and Modification Agreement ("the Original Forbearance Agreement"), under which GECC agreed to forbear from exercising its rights against the Borrowers and guarantors until May 31, 2010, provided that certain conditions were met. The Original Forbearance Agreement also contained the following provision in Section 8: "Borrower understands and agrees that Lender has entered into this Agreement in good faith and, in accordance with the present policies and procedures of Lender."

The parties to the Original Forbearance Agreement, including Anderson, then executed two further amendments to the Original Forbearance Agreement—the first on June 1, 2010, and the second on February 24, 2011—extending the period of forbearance and modifying certain terms. The effect of those amendments was to extend forbearance through January 31, 2012.

Anderson does not dispute that the Borrowers failed to make payments to GECC in March 2012, and he admits that he himself has not paid any amounts to GECC in satisfaction of his guaranty. But he denies that he personally has defaulted on the guaranty or breached any contract with GECC.

On April 10, 2012, the Borrowers all filed separate Chapter 11 petitions in the U.S. Bankruptcy Court for the District of Colorado. A plan of reorganization was confirmed on August 1, 2013, granting GECC claims totaling $5,372,467.53, comprising $2,800,000.00 in secured claims and $2,572,467.53 in unsecured claims.

Beyond those undisputed facts, Anderson makes an additional allegation, supported by an affidavit whose content the Court accepts as true for the purposes of the motion for summary judgment. According to Anderson, in the spring of 2007, prior to execution of the Master Security Agreement and the Individual Guaranties, a GECC sales representative named Chris Nay approached the president of the Borrowers, Jeffrey Moll, and made certain representations concerning GECC's policy with respect to the circumstances under which it would enforce the Individual Guaranties, which Moll then communicated to Anderson. Evidencing this is Moll's affidavit, which describes Nay as having represented "that it was GECC's policy not to 'chase guarantors' unless there was evidence of fraud or other wrongdoing in connection with the loan." Def.'s Exh. A ¶ 3.[2]

## IV. Discussion

GECC's sole claim against Anderson is for breach of contract arising from Anderson's individual guaranty. "A party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted).[3] Because Anderson has identified a material ambiguity in the

---

[2] Moll's affidavit is dated November 3, 2014, but this allegation was made earlier in the litigation. Counsel for Anderson also questioned Beth Bonell, a vice president at GECC, about the "fraud or wrongdoing" policy during her January 16, 2014 deposition and referenced an earlier August 10, 2012 affidavit by Moll in which he described his conversation with Nay. Def.'s Exh. B, at 63.

[3] The Court applies Colorado law in this section. Under Connecticut choice-of-law principles, a choice-of-law clause in a contract is generally given effect, *Bulldog New York LLC v. Pepsico, Inc.*, No. 3:08CV1110 AWT, 2014 WL 1284903 (D. Conn. Mar. 31, 2014), and Section 11 of the Original Forbearance Agreement provides that "[t]his Agreement and the transactions evidenced hereby are governed by the laws of the State of Colorado." Both Anderson and GECC have alluded to the fact that the Individual Guaranties provide for governance under Connecticut law. But the key contractual provisions at issue in this ruling are contained within the Original Forbearance Agreement.

agreements evidencing his obligations, and thereby raised a genuine dispute of material fact as to his failure to perform, GECC is not entitled to summary judgment.

Anderson claims that language in Section 8 of the Original Forbearance Agreement ("Borrower understands and agrees that Lender has entered into this Agreement . . . in accordance with the present policies and procedures of Lender.") encompasses a promise by GECC not to "proceed against" guarantors in the absence of fraud or wrongdoing related to the loans, inasmuch as the parties understood GECC's "present policies and procedures" to include such a policy, based on Nay's representations. As a result, says Anderson, GECC has materially breached its obligations by suing Anderson in the absence of fraud or wrongdoing, thereby excusing any subsequent breach by Anderson.

Another interpretation of Anderson's claim is that the Original Forbearance Agreement effectively modified the Individual Guaranty to add a condition to Anderson's requirement to perform under the Individual Guaranty—namely, that he would have to honor the guaranty only in the event of fraud of wrongdoing related to the loans—and the condition has not been satisfied. Anderson pled this defense and alluded to it in his brief opposing summary judgment despite not expressly invoking it. *See* Def.'s Am. Ans., at 14 ("Plaintiff has failed to meet certain conditions precedent before filing the present lawsuit."); *id.* at 16 ("Defendants affirmatively plead conditions precedent to liability which deny Plaintiff any recovery or relief.").

If, as Anderson claims, the parties understood the Original Forbearance Agreement to modify the guarantors' obligations by conditioning them on the occurrence of fraud or wrongdoing, then GECC would have to show that the condition was met in order to establish Anderson's breach—something it has not done in the summary judgment record. *See FBS AG Credit, Inc. v. Estate of Walker*, 906 F. Supp. 1427, 1430-31 (D. Colo. 1995) ("When one enters

into a guaranty to pay the debt of another, the guarantor has the right to make the terms and to set forth the conditions upon which he assumes the burden of guaranteeing the debt."); *St. Paul Fire & Marine Ins. Co. v. Estate of Hunt*, 811 P.2d 432, 434 (Colo. App. 1991) ("[A] condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.").

In order to prevail on summary judgment, GECC must show that the Original Forbearance Agreement unambiguously did not modify the Individual Guaranty to condition Anderson's obligations on the occurrence of fraud or wrongdoing. *Anderson v. Eby*, 998 F.2d 858, 866 (10th Cir. 1993) (applying Colorado law) (At the summary judgment stage, "it is incumbent on [the moving party] to demonstrate to the court that . . . the [contract] unambiguously supports [its] position."); *Rocky Mountain Health Maint. Org., Inc. v. Colorado Dep't of Health Care Policy & Fin. ex rel. Rizzuto*, 54 P.3d 913, 919 (Colo. App. 2001) ("Once a contract is determined to be ambiguous, its interpretation becomes an issue of fact for the trial court to decide in the same manner as other disputed factual issues."). "A document is ambiguous when it is reasonably susceptible to more than one meaning" after being construed "in harmony with the plain and generally accepted meaning of the words employed and by reference to all the parts and provisions of the agreement and the nature of the transaction which forms its subject matter." *Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993).

The first clause of the Original Forbearance Agreement that supports GECC's interpretation—Section 3(a) ("the Guaranties remain in full force and effect")—does not conclusively answer the question whether the "present policies and procedures" clause adds new conditions to the Individual Guaranties. Section 14 of the Original Forbearance Agreement

provides that "[t]he Loan Documents[4] are hereby deemed amended to the extent necessary to reflect the modifications set forth in this Agreement." And Section 7 provides that "[t]o the extent any term or provision of this Agreement is different from or inconsistent with any term or provision of any loan document[5] executed in connection with the Obligations, this Agreement shall control." These provisions are in tension with Section 3(a), creating ambiguity as to whether the parties intended the Original Forbearance Agreement, including the "present policies and procedures" clause, to add new conditions to the Individual Guaranties.

The vague phrase "present policies and procedures" must have some effect, *Bledsoe Land Co. LLLP v. Forest Oil Corp.*, 277 P.3d 838, 846 (Colo. App. 2011) ("It is paramount in contract interpretation that we . . . give effect to all the contract's provisions."), but the agreement itself provides no definition, suggesting that the words have a special meaning arising from an understanding between the parties. Such terms are ambiguous by their nature, requiring clarification from extrinsic evidence. *See, e.g.*, *Keith v. Kinney*, 140 P.3d 141, 147 (Colo. App. 2005) ("'Minerals' is . . . a general word susceptible of different meanings, and therefore, courts look to extraneous evidence to reveal the parties' intent, including the circumstances surrounding the reservation at issue."); *Town of Silverton v. Phoenix Heat Source Sys., Inc.*, 948 P.2d 9, 12 (Colo. App. 1997) ("A trial court may not look beyond the plain words of a contract . . . unless the contract terms are ambiguous or are used in a special or technical sense not defined in the contract.").

---

[4] The term "Loan Documents" is defined in Section M of the Original Forbearance Agreement to include "the Security Agreement and other documents executed under or in connection with the Security Agreement." While not expressly mentioning the Individual Guaranties, this broad definition would seem to encompass the Individual Guaranties. At the very least, the term is ambiguous.

[5] It is unclear whether the un-capitalized "any loan document" refers to the same documents as the defined "Loan Documents." But the full phrase "any loan document executed in connection with the Obligations" seems to refer to the same broad set of documents—the term "Obligations" is defined in Section H of the Original Forbearance Agreement as the payments owed by the Borrowers under the Security Agreement and other documents executed in connection with it.

7

There is evidence both for and against reading the phrase "present policies and procedures" to modify the scope of Anderson's guaranty, which prevents the Court from resolving the ambiguity as a matter of law. The conversation between Moll and Nay supports Anderson's reading. *Erdenberger, Inc. v. Partek N. Am., Inc.*, 865 P.2d 850, 852 (Colo. App. 1993) ("[I]n determining whether a contract is ambiguous, a court may conditionally admit extrinsic evidence on this issue and needs to strike such evidence only if it determines that an ambiguity does not exist."). Although the fact that the conversation occurred more than two years before the language appeared in the Original Forbearance Agreement may cast doubt on the plausibility of such an interpretation, that assessment is for the fact-finder. Cutting against Anderson's reading is Section 4(c) of the Original Forbearance Agreement ("the obligations of Borrowers and Guarantors . . . are and shall be absolute and unconditional"), which suggests that the parties did not intend to add conditions to the guaranty.

Weighing those pieces of evidence is not proper on a motion for summary judgment, and the broad disclaimer in Section 4(c) does not necessarily control. Under Anderson's version of the facts, the parties effectively executed a contract with conflicting provisions—a provision disclaiming conditionality and a provision adding certain conditions. Similar conflicts commonly arise in sales and employment contracts, and are themselves a form of ambiguity.[6] A fact-finder could determine that such a conflict exists and resolve it in favor of the existence of the condition. Doing so would not render Section 4(c) meaningless, as it would still operate to disclaim other potential conditions. Indeed, a central effect of including "unconditional"

---

[6] *See, e.g.*, *Wilson Trading Corp. v. David Ferguson, Ltd.*, 244 N.E.2d 685, 689 (N.Y. 1968) (interpreting a provision of the Uniform Commercial Code that has been adopted by Colorado) ("An attempt to both warrant and refuse to warrant goods creates an ambiguity which can only be resolved by making one term yield to the other."); *Evenson v. Colorado Farm Bureau Mut. Ins. Co.*, 879 P.2d 402, 409 (Colo. App. 1993) ("[E]ven if there is a disclaimer in the manual, an employer may nevertheless be found to have manifested an intent to be bound by its terms if the manual contains mandatory termination procedures or requires 'just cause' for termination. . . . If evidence in the record creates an issue as to whether an employment contract existed, then a directed verdict or summary judgment is inappropriate.").

language in a guaranty is to eliminate any requirement that the creditor seek repayment from the debtor before pursuing the guarantor, and that effect would be preserved under Anderson's reading. *See United States v. Willis*, 593 F.2d 247, 254 (6th Cir. 1979) ("[T]he term 'unconditional guaranty' has meaning only when contrasted with a 'conditional guaranty' . . . . [D]istinguishing between these lies primarily with the difference in the creditor's duty to proceed against the principal obligor before attempting to collect from the guarantor.").

The Original Forbearance Agreements is ambiguous as to whether Anderson's liability as a guarantor is conditional on the existence of fraud or wrongdoing in connection with the loan, which forecloses summary judgment in GECC's favor. One clause characterizes the guaranty as "absolute and unconditional." But a second clause states that GECC entered the agreement "in accordance with [its] present policies and procedures," which may or may not carve out an exception to the first clause, when read in the context of extrinsic evidence of what the parties understood those words to mean. These are issues for a fact-finder.

**Conclusion**

For the foregoing reasons, GECC's Motion for Summary Judgment (ECF No. 44) is DENIED.

**SO ORDERED** this 11th day of February, 2015, at Hartford, Connecticut.

                                    /s/
                                Michael P. Shea
                                United States District Judge